UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELISSA JAIME FLATEAU,

    Plaintiff,

v.                                                    Case No: 8:14-cv-2405-T-36TGW

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

# **ORDER**

This cause comes before the Court upon the Report and Recommendation ("R&R") filed by Magistrate Judge Thomas G. Wilson on November 30, 2015 (Doc. 18). Magistrate Judge Wilson recommends that the decision of the Commissioner be affirmed. Plaintiff Melissa Jaime Flateau ("Flateau") filed a timely objection to the R&R (Doc. 19), to which the Commissioner responded (Doc. 22).

After careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the court file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects.

## *I.  BACKGROUND*

Flateau originally filed claims for disability benefits and supplemental security income payments alleging that she was disabled due to "bipolar disorder/schizophrenia/anxiety/depression." Her claims were denied initially and upon reconsideration. Flateau requested and received a *de novo* hearing before an administrative law judge ("ALJ").

The ALJ found that the plaintiff had severe impairments of major depressive disorder and bipolar II disorder, but was not disabled (Tr. 115, 123). Upon the plaintiff's request, the Appeals Council reviewed that decision, and remanded the matter to the ALJ for further consideration of, among other things, the medical source statement of the plaintiff's treating psychiatrist, Dr. Bharminder Bedi (Tr. 130-131).

On remand, the plaintiff received another hearing before the same ALJ, who issued a new decision, finding that the plaintiff had severe impairments of major depressive disorder and bipolar II disorder (Tr. 24). In light of those impairments, the ALJ determined (Tr. 28-29):

> [T]he claimant has the residual functional capacity to perform a full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c), with the following nonexertional limitations: an occasional limitation (1/3 of the day) for concentrating on tasks assigned and coping with work stress and dealing with the general public, but capable of performing routine, predictable tasks.

The ALJ concluded that, with these limitations, the plaintiff was unable to perform her past relevant work (Tr. 37). However, based on the testimony of a vocational expert, the ALJ determined that the plaintiff could perform other jobs that exist in significant numbers in the national economy, such as auto detailer, laundry worker, and general industrial cleaner (Tr. 37-38). The vocational expert elaborated that each of these jobs involves "primarily rote tasks ... which doesn't require a lot of concentration" (Tr. 67) and that automobile detailers and general industrial cleaners do not involve working within close proximity of others (Tr. 68). Accordingly, the ALJ found that the plaintiff was not disabled (Tr. 38). The Appeals Council let the decision of the ALJ stand as the final decision of the defendant. Judge Wilson now recommends that this Court affirm the Commissioner's decision that Plaintiff is not entitled to disability benefits.

## II.     LEGAL STANDARDS

### a. Review of a Report and Recommendation

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. When a party makes a timely and specific objection to a Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id*.

### b. Review of the Commissioner's Decision

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and is based upon proper legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Id*. Where the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. 42 U.S.C. § 405(g); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("If the Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it."). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its own] judgment for that of the [Commissioner]." *Phillips*, 357 F.3d at 1240 n.8 (quotations omitted).

*c. An ALJ's Five-Step Disability Analysis*

The SSA has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Eleventh Circuit has explained this process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The plaintiff has the burden of proof on the first four steps; the Commissioner carries the burden on the fifth step. *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 136-37 (11th Cir. 2009). If it is determined at any step in the analysis that the claimant is disabled or not disabled, the evaluation does not proceed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

III. Discussion

  a. *Did the ALJ properly weigh the evidence?*

Plaintiff argues that the ALJ improperly weighed the medical evidence when determining her residual functional capacity ("RFC"). The ALJ discredited Dr. Bedi's testimony based on the fact that Plaintiff's Global Assessment of Functioning Scale ("GAF") scores were 60 and higher. However, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart,* 133 Fed. App'x. 684, 692 n. 5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). Moreover, in

4

the time since August 21, 2000, even the American Psychiatric Association ("APA") has ceased using GAF scores for assessing a patient's level of functioning. The GAF scale has been rejected as an appropriate method of assessing functioning because of a conceptual lack of clarity and due to "questionable psychometrics in routine practice." *Diagnostic and Statistical Manual of Mental Disorders,* 5th Edition ("DSM-5"), p. 16.

> The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

*McCloud v. Barnhart,* 166 F. App'x 410, 418-19 (11th Cir. 2006). Here, the ALJ noted the following reasons for discrediting a portion of Dr. Bedi's testimony:

> [A]t Exhibit 20F, Dr. Bedi again placed claimant at "marked' in several categories and predicted at 19F that she could be expected to decompensate under stress. These predictions are not supported by her successful work at school, her GAF scores and the fact that any mental health crisis the claimant had was triggered by a family issue that w[as] transient. Dr. Bedi's prediction of possible decompensation under stress is not supported by his observations and optimistic assessments. Nowhere do records indicate that claimant is receiving any accommodations at school and records reference that she is an honor student. She is obviously capable of overcoming the stress of examinations and keeping up with the school schedule. This requires concentration, socializing, using initiative and applying oneself. There has also been no crises or hospitalizations.
>
> Dr. Bedi's opinions are simply not supported by his own assessments and appear to be [] misguided sympathy for his client (see most recent assessment in September 2012 with a GAF of 60 as discussed earlier in this decision).

Doc. 12-2 at p. 38. These statements by the ALJ sufficiently explain his reasoning for discrediting a portion of Dr. Bedi's testimony. The ALJ's discrediting of this testimony was not based solely on the GAF scores, but also on Dr. Bedi's other testimony and facts regarding Flateau's current life activities.

Flateau also argues that the ALJ improperly gave little weight to the opinion of Earl Teller, Ph.D., a consultative examiner, asserting that Dr. Teller identified clinical abnormalities. However,

5

Teller's exam showed that Plaintiff's intellectual functioning, based on her vocabulary, general fund of information, and education, was estimated to be within the high average range; her mood throughout the interview was neutral, and her affect was appropriate to the circumstances; she denied symptoms of a thought disorder, and there were no hallucinations or delusions noted throughout the examination. (Tr. 25-26, 35-36, 584-588). The "clinical findings" Plaintiff cites, including the Beck's Depression Inventory, were nothing more than Plaintiff's own self-reports and subjective complaints to Dr. Teller. (Tr. 585-591). The ALJ properly considered Dr. Teller's opinion and noted that as a one-time examiner, Dr. Teller did not have a treating relationship with Plaintiff. The ALJ gave substantial weight to the findings of Dr. Teller that Plaintiff was alert and fully cooperative, answering all questions asked of her in a clear voice, using coherent, grammatically correct sentences, and finding her intellectual functioning to fall within the high average range (Tr. 35-36). However, the ALJ found that Dr. Teller's opinion that Plaintiff was unable to work successfully even part-time, inconsistent with his other observations. She was not having "crying spells," and her GAF scores improved to 68 and then 71 in June of 2009 (Tr. 35, 457-495).

Additionally, although Plaintiff reported to Dr. Teller in January 2011, that during the past year she had had serious psychiatric decompensation occurring one to three times per month, during which she experienced crying spells and felt lonely and sad, there simply were no medical records to substantiate this subjective report, as no records showed any emergency room visits associated with these episodes (Tr. 35-36). In fact, as noted above, in several treatment records with Dr. Bedi, Plaintiff reported not being depressed, suicidal, delusional or psychotic (Tr. 36). The ALJ gave appropriate weight to the opinion of the one-time examining psychologist, who did not have a treating relationship with Plaintiff, and whose opinion was not supported by his own

assessment or other medical evidence of record, and Plaintiff has failed to demonstrate error. Doc. 18 at pp. 28-32.

Thus, this Court agrees with Magistrate Judge Wilson and finds that the ALJ properly weighed the evidence.

### b. Did the ALJ properly evaluate Plaintiff's credibility?

It is well-settled that "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted). Here, Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility, by considering Plaintiff's daily activities and the consistent treatment notes documenting that she improved with and responded well to treatment. Doc. 19 at pp. 7-8. She did not raise these claims in her initial brief. *See* Doc. 13. In any event, the ALJ properly considered them (Tr. 27-37). *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p; *Harwell v. Heckler,* 735 F.2d 1292, 1293 (11th Cir. 1984); *Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987). Plaintiff also contests the Magistrate Judge's consideration of the fact that Plaintiff did not always take her medication and stopped taking Abilify against medical advice. Doc. 19 at p. 8. Plaintiff raised no argument about the ALJ's consideration of noncompliance in her initial brief. *See* Doc. 13. This argument, like the others Plaintiff failed to raise in her initial brief, is waived. *See Worley v. City of Lilburn,* 408 F. App'x 248, 253 (11th Cir. 2011) (citing *Williams v. McNeil,* 557 F.3d 1287, 1292 (11th Cir. 2009)). Moreover, it does not appear from the decision that the ALJ expressly considered Plaintiff's noncompliance in finding her not completely credible, but even if he had, it would not have been error. Doc. 18 at pp. 36-37; 20 C.F.R. §§ 404.1529(c)(3)(iv)-(vi), 416.929(c)(3)(iv)-(vi); SSR 96-7p; *Ellison,* 355 F.3d at 1275.

The ALJ properly considered Plaintiff's unpersuasive appearance and demeanor in assessing her credibility (Tr. 35). The ALJ did not apply a "sit and squirm" test as argued by

Plaintiff. Doc. 19 at 9. The Eleventh Circuit has held that ALJs are not prohibited from considering a claimant's appearance and demeanor at the hearing. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). The regulations and SSR 96-7p also allow an ALJ to consider his or her observations of the claimant in assessing the credibility of the claimant's allegations. Doc. 18 at p. 38; 20 C.F.R. §§ 404.1529(c)(3)(vii), (c)(4), 416.929(c)(3)(vii), (c)(4); SSR 96-7p.

### c. *Did the ALJ rely on flawed vocational expert testimony?*

Finally, Flateau argues that the ALJ posed an inappropriate hypothetical question to the vocational expert ("VE") because the ALJ did not describe any limitations in Flateau's capacity to maintain persistence or pace due to her mental impairments despite a moderate limitation in that area. The Eleventh Circuit does not require the ALJ to specifically use the words "moderate," "concentration," "persistence," and/or "pace" in the hypothetical question to the VE or preclude the ALJ from otherwise accounting in the hypothetical for his PRT rating that Plaintiff had "moderate" difficulties in maintaining concentration, persistence, or pace. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011). *See also Timmons v. Comm'r of Soc. Sec.*, No. 12-16166, 2013 WL 3388234, at *9-10 (11th Cir. July 9, 2013); *Pinion v. Comm'r of Soc. Sec.*, No. 13-10134, 2013 WL 3032804, at *2 (11th Cir. June 19, 2013); *Hurst v. Comm'r of Soc. Sec.*, No. 12-15763, 2013 WL 2663092, at *2-3 (11th Cir. June 14, 2013); *Jacobs v. Comm'r of Soc. Sec.*, No. 12-15509, 2013 WL 2436454, at *2-3 (11th Cir. June 6, 2013); *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 916-17 (11th Cir. 2013); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 (11th Cir. 2012); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 28-29 (11th Cir. 2012); *Rosario v. Comm'r of Social Sec.*, 490 F. App'x. 192, 195 (11th Cir. 2012). *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012); *Syed v. Comm'r of Soc. Sec.*, 441 F. App'x 632, 634-35 (11th Cir. 2011). Here, the ALJ included in the residual functional capacity and in the

hypothetical question an occasional limitation for concentrating on tasks assigned and for coping with work stress, but capable of performing routine, predictable tasks (Tr. 64). Doc. 18 at p. 42. These limitations sufficiently accounted for the plaintiff's limitations in concentration, persistence or pace, because, despite these limitations, the record evidence showed that Plaintiff retained the ability to perform routine and predictable tasks, and the hypothetical question was not flawed. *See id.* Plaintiff has failed to show error.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

(1) The Report and Recommendation of the Magistrate Judge (Doc. 18) is **ADOPTED, CONFIRMED,** and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

(2) The final decision of the Commissioner is **AFFIRMED**.

(3) The Clerk is directed to terminate any pending motions, enter a judgment in favor of Defendant and close this case.

**DONE** and **ORDERED** at Tampa, Florida on March 16, 2016.

Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record
U.S. Magistrate Judge Thomas G. Wilson

9